UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAID MOMAND,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

CASE NO. 2:26-cv-02772-GJL

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Said Momand, a native and citizen of Afghanistan, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 6. Before the Court is Petitioner's Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and various forms of injunctive relief. *Id.* Respondents to the Petition include Todd Blanche (United States Attorney General), Markwayne Mullen (Secretary of the Department of Homeland Security ("DHS")), Julio Hernandez (Field Office Director for ICE Enforcement and Removal Operations ("ERO") in Seattle, Washington), ICE, and Bruce Scott (NWIPC Warden) (collectively "Respondents").[1] The Petition has been fully briefed. Dkts. 6, 10, 13.

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 4.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 6) **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief as set forth in the conclusion below.

## I. FACTUAL BACKGROUND

Petitioner Said Momand, a native and citizen of Afghanistan, entered the United States on or about November 13, 2023. Dkt. 11 at 2; Dkt. 12-1; Dkt. 6 at 5. That same day, Petitioner was apprehended by immigration officials and issued a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. 11 at 2; Dkt. 12-2. Petitioner was released on his own recognizance the following day. Dkt. 11 at 2; Dkt. 12-3.

Petitioner thereafter filed an application for relief from removal, which was denied, and Petitioner was ordered removed to Afghanistan on August 11, 2025. Dkt. 11 at 2; Dkt. 12-4. Approximately two weeks later, immigration officials encountered Petitioner at the Blaine, Washington, Port of Entry after he was denied entry into Canada and returned to the United States by Canadian authorities. Dkt. 11 at 2; Dkt. 6 at 7. Petitioner was taken into custody and subsequently transferred to NWIPC. Dkt. 11 at 2.

While detained, Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA"). Dkt. 6 at 2–3; Dkt. 11 at 2. The BIA dismissed Petitioner's appeal, and his removal order became final on February 2, 2026. Dkt. 6 at 2–3; Dkt. 11 at 3. Petitioner remains detained at NWIPC. Dkt. 6 at 3.

## II. PROCEDURAL BACKGROUND

Petitioner initiated this action on August 5, 2026, by filing an Application to Proceed *In Forma Pauperis* ("IFP") and a Motion to Appoint Counsel. Dkts. 1, 2. The undersigned was assigned to this case on August 6, 2026. Dkt. 3. The following day, the Court granted

Petitioner's IFP Application and appointed the Office of the Federal Public Defender to represent Petitioner in this matter. Dkts. 5, 7. Petitioner's habeas Petition was then accepted for filing on the docket. Dkt. 6. Thereafter, Respondents filed a Response, Dkt. 10, with supporting evidence. Dkt. 11; Dkts. 12, 12-1–12-4. On August 26, 2026, Petitioner filed a Reply. Dkt. 13.

Upon review of the parties' submissions and the governing law, the Court **GRANTS** the Petition (Dkt. 6) **IN PART** and **ORDERS** Petitioner's immediate release and injunctive relief as outlined in the conclusion below.

## III. DISCUSSION

Petitioner raises four Grounds for relief. In Ground One, Petitioner contends that his continued detention pending removal has become indefinite and is therefore unlawful according to *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 21–23. In Grounds Two through Four, Petitioner seeks various forms of prospective injunctive relief. Specifically, Petitioner seeks to restrict Respondents' ability to re-detain him (Ground Two), to prohibit Respondents from removing him to a country other than Afghanistan without notice and an opportunity to be heard in reopened removal proceedings ("third-country removal") (Ground Three), and to prohibit Respondents from removing him to a third country where he is likely to face imprisonment or harm ("punitive removal") (Ground Four). *Id.* at 23–26.

Respondents argue the Petition and all requests for relief therein should be denied. Dkt. 5. In particular, Respondents argue that Petitioner's indefinite detention claim should be denied because Petitioner has not met his initial burden under applicable framework set forth in *Zadvydas*. *Id.* at 4–6. Respondents further argue that Petitioner's requests for injunctive relief are overbroad, speculative, and inappropriate for adjudication in these proceedings. *Id.* at 6–8.

As discussed in greater detail below, the Court finds that Petitioner's detention pending removal is of indefinite duration, thus no longer authorized, and grants federal habeas relief on that basis. The Court further finds that Petitioner is entitled to some, but not all, of the injunctive relief he seeks.

**A. Indefinite Detention Claim (Ground One)**

Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an immigration judge.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id.*

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-

day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id*. If the government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

It is undisputed that Petitioner's detention now exceeds 180 days and has extended beyond the presumptively reasonable period. Dkt. 6; Dkt. 10 at 5. Thus, the Court analyzes Petitioner's indefinite detention claim under *Zadvydas*'s burden-shifting framework wherein Petitioner bears the initial burden of providing good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and Respondents must then rebut Petitioner's showing with evidence demonstrating removal is reasonably likely to occur in the reasonably foreseeable future.

1. <u>Petitioner Provides Good Reason to Question the Likelihood of his Removal in the Reasonably Foreseeable Future</u>

Petitioner contends there is good reason to believe his removal will not occur within a reasonable timeframe because, despite having a final order of removal since February of this

year, no meaningful progress or concrete arrangements have been made toward his eventual removal. Dkt. 6 at 21–23. Petitioner states that no travel document enabling his removal to Afghanistan has been produced, nor has any timeline for his removal to that country been communicated. *Id.* Petitioner further represents that he has considered options for third-country removal presented to him by immigration officials, but he has not consented to such removals because he has no ties to the countries presented and does not speak the local languages. *Id.* Indeed, Respondents contend that there is no present intent to remove Petitioner to a country other than Afghanistan. Dkt. 10 at 6; Dkt. 11 at 3.

Based on the absence of any meaningful progress made towards Petitioner's removal to Afghanistan, or any other country, the Court finds that Petitioner has provided good reason to question the likelihood of his removal in the reasonably foreseeable future. The Court observes as well that the poor diplomacy and lack of a repatriation agreement between the United States and Afghanistan bolsters Petitioner's already sufficient showing. *Khan v. Blanche*, No. 2:26-CV-02629-TLF, 2026 WL 2445148, at *3 (W.D. Wash. Aug. 20, 2026) (collecting cases); *Wazir v. Att'y Gen. of United States*, No. 3:26CV526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026) ("Any effort to remove [noncitizens] to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan."); *see also Msharif v. Hernandez*, No. 2:26-CV-01121-GJL, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026) ("[D]ata published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada.").

Accordingly, the burden shifts to Respondents to present evidence rebutting Petitioner's showing.

2. Respondents Fail to Show Petitioner's Removal is Likely to Occur in the Reasonably Foreseeable Future

Respondents argue only that Petitioner has failed to satisfy his initial burden. Dkt. 10 at 4–6. They do not contend that, if the burden shifts, the evidence before the Court is sufficient to establish a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *Id.* Although Respondents make no apparent attempt to rebut Petitioner's showing, the Court concludes that the evidence they have submitted falls considerably short of doing so.

Respondents' only evidence pertaining to the likelihood of Petitioner's removal is a Declaration stating that, more than five months after Petitioner's removal order became final, "ERO submitted a request for an Afghanistan travel document for Petitioner and awaits a response." Dkt. 11 at 3. That statement does not establish what ERO actually did beyond initiating some unspecified request. The Declaration does not identify, for example, whether travel documents were requested from Afghan authorities or whether ERO simply initiated an internal agency procedure. *See, e.g., Tran v. Blanche*, No. 2:26-CV-01782-GJL, 2026 WL 1998568, at *4 (W.D. Wash. July 10, 2026) (Respondent's Return argued that travel document requests were made but evidence demonstrated only that ERO initiated internal agency approval process and had not requested travel documents from the receiving country); *Lam v. Blanche*, No. 2:26-CV-01838-GJL, 2026 WL 2071148, at *4 (W.D. Wash. July 17, 2026) (similar).

Even assuming *arguendo* that the alleged request was tendered to Afghan authorities, without further evidence showing that the request was received by those authorities, is being processed, is likely to be granted, and will lead to Petitioner's removal on a reasonably foreseeable timeline, the bare act of *requesting* travel documents provides no reliable evidentiary basis to conclude that Petitioner's removal is significantly likely to occur in the reasonably

foreseeable future. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) (collecting cases); *Khan*, 2026 WL 2445148, at *3; *Saadhom v. Bondi,* No. 2:26-cv-00425-TL, 2026 WL 698786, at *5 (W.D. Wash. Mar. 12, 2026).

Accordingly, Petitioner's continued detention pending removal under 8 U.S.C. § 1231(a)(6), as construed in *Zadvydas*, is no longer authorized and is unlawful.

3. Immediate Release is the Appropriate Relief for Petitioner's Indefinite Detention

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700. Accordingly, the Court concludes that the appropriate relief in this case is Petitioner's immediate release from immigration detention under reasonable conditions of supervision, if any.

**B. Claims for Injunctive Relief (Grounds Two through Four)**

In his remaining Grounds for relief, Petitioner invokes the Court's habeas and federal question jurisdiction to request injunctive relief concerning possible future re-detention and third-country removal. Dkt. 6 at 23–27. As these Grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each Ground in turn. *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

1. Re-Detention (Ground Two)

Petitioner first seeks to enjoin Respondents' detention authority, and requests that the Court impose specific procedural requirements that must be met before Respondents may lawfully re-detain Petitioner (either to effectuate his removal or upon materially changed circumstances warranting his re-detention) or alter the conditions of his release. Dkt. 6 at 23–24, 26–27. Such a broad sweeping request is not supported by the record in this case. While the Court concurs with Petitioner that Respondents must comport with due process when exercising their detention authority, the Court declines to conclusively resolve what process may be due to Petitioner in all circumstances preceding a future re-detention (whether in physical confinement or by means of other restraint), nor will the Court prescribe a comprehensive procedural framework for any potential re-detention or supervised release decision Petitioner may face.

2. Third-Country Removal (Ground Three)

Petitioner next requests that Respondents be enjoined from removing him to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings. Dkt. 6 at 24–25, 27.

"A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing Baltodano v. Bondi, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), and Abubaka v. Bondi, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen*, 796 F. Supp. 3d at 727–29). Given the speed at which third-country removal can be executed once the decision to pursue such removal under this policy is made, these courts also find requests for injunctive relief ripe for adjudication even without evidence of

the Government's active efforts to pursue third-county removal of the noncitizen. *Id.*; *see also Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026) (noting that, under the current policy, a noncitizen "could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention").

Thus, where, as here, the Government does not dispute a noncitizen is subject to the current third-country removal policy, an order enjoining execution of that policy is appropriate. *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (granting relief and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country."); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy …there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting petitioner's removal to third country is imminent).

Accordingly, should Respondents take steps to remove Petitioner to a country other than Afghanistan, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *See, e.g., Nguyen*, 796 F. Supp. 3d at 739 (requiring that noncitizen be granted opportunity to challenge third-country removal in reopened removal proceedings).

//

3. Punitive Removal (Ground Four)

Finally, Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. 6 at 25–27 (citing *Wong Wing v. United States*, 163 U.S. 228, 236–38 (1896)). Petitioner therefore seeks an order prohibiting his removal to such a country. *Id.*

Courts in this District have granted relief on similar claims, holding that such punitive enforcement of the Government's third-country removal policy is unconstitutional under *Wong Wing*. *See Nguyen v. Hermosillo*, No. 2:26-CV-00335-GJL, 2026 WL 538497, at *8 (W.D. Wash. Feb. 26, 2026); *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1201–05 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 732–35; *c.f. Somsanuk v. Bondi*, No. 26-CV-48-MLP, 2026 WL 221139, at *6 (W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "any third country," concluding such a claim was overbroad); *Khan*, 2026 WL 2445148, at *5 (similarly denying an injunction "prohibiting petitioners' removal to any third country on the ground that the government's third-country removal program is unconstitutionally punitive in all applications").

Further, in finding the risk of punitive enforcement to be nonspeculative, courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice." *Baltodano*, 815 F. Supp. 3d at 1202 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34). The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the [G]overnment is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted). The courts in *Baltodano*

and in *Abubaka*, relying heavily on the *Nguyen* reasoning, concluded that Respondents' "practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 815 F. Supp. 3d at 1203 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or other punishment upon arrival.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1) The Petition (Dkt. 6) is **GRANTED IN PART;**

(2) Respondents **SHALL** immediately release Petitioner Said Momand under reasonable conditions of supervision, if any;

(3) Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(4) Respondents **SHALL NOT** remove Petitioner to a country other than the country designated in his Order of Removal without first providing him with written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(5) Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

Dated this 3rd day of September, 2026.

Grady J. Leupold
United States Magistrate Judge